IN THE CIRCUIT COURT OF ST. LOUIS CITY
TWENTY-SECOND JUDICIAL CIRCUIT
STATE OF MISSOURI

| | |
|---|---|
| **ELIZABETH RECHTIEN** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. |
| vs. ) | |
| ) | Division: |
| **HMO MISSOURI, INC.** ) | |
| **d/b/a ANTHEM BLUE CROSS AND** ) | |
| **BLUE SHIELD** ) | |
| ) | |
| Serve at: ) | |
| ) | |
| 1831 Chestnut St ) | |
| St. Louis, MO 63103. ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |

## PETITION

COMES NOW Plaintiff, Elizabeth Rechtien, by and through counsel, and for her claim against Defendant HMO Missouri, Inc. d/b/a Anthem Blue Cross and Blue Shield, hereby states and alleges as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff is, and was at all times relevant herein, a resident of St. Louis County, State of Missouri, and an individual over the age of 21 years.

2. Defendant HMO Missouri, Inc. d/b/a Anthem Blue Cross and Blue Shield (hereinafter Anthem) is, and was at all times relevant herein, a corporation licensed to do business in Missouri. It is located at 1831 Chestnut St, Saint Louis, MO 63103.

3. Venue and jurisdiction are proper under RSMo §508.010, in that the discrimination at issue occurred in St. Louis City.

4. On August 3, 2020, Plaintiff was employed by Defendant Anthem as a Customer Service Representative until her resignation on or around September 29, 2021.

5. Plaintiff is and was at all times during the events described in this Petition an individual with a disability.

   a. Rechtien suffers from autoimmune disease, a complex disease that compromises a person's immune system by allowing the body to mistakenly attack its own healthy body cells. There are various types of autoimmune diseases, and they can affect almost any part of the body.[1]

   b. Autoimmune diseases can be caused by a combination of genetics, environmental factors, and immune system changes. They can even occur when a person with certain genes is exposed to an environmental trigger. In rare cases, an autoimmune disease is monogenic, caused by mutations in a single gene. But most of the time, autoimmunity is polygenic, with genetic risk determined by the interplay of numerous genes.[2]

   c. As a result of her autoimmune disease, Plaintiff Rechtien's immune system had been susceptible to asthma, Covid-19, kidney cancer, and Diabetes.

   d. Rechtien would undergo symptoms of shortness of breath, coughing, wheezing, dizziness, light-headedness, and changes in her blood sugar levels, which would require treatment and monitoring throughout the day.

---

[1] *Autoimmune Diseases*, NAT'L INST. HEALTH, https://www.niams.nih.gov/health-topics/autoimmune-diseases (last reviewed Mar. 2016).
[2] Simon Mankin, *Cracking the Genetic Code of Autoimmune Disease*, NATURE (July 14, 2021), https://www.nature.com/articles/d41586-021-01839-6#:~:text=Autoimmune%20diseases%20arise%20from%20a%20combination%20of%20genetic,monogenic%2C%20%20caused%20by%20mutations%20in%20a%20single%20gene.

2

Electronically Filed - City of St. Louis - September 19, 2022 - 10:25 PM

    e.    Numerous governmental entities have emphasized the need for healthy, safe, and decent workplace standards, in response to the Covid-19 pandemic.[3]



6.    Plaintiff disclosed her disability to her employer prior to being hired.

7.    Defendant Anthem allowed Plaintiff and other employees to work from home. In 2022, Anthem started bringing employees back into the office.

8.    Plaintiff was given equipment by Defendant Anthem to work from home at the start of her employment. From the very first day of training on August 3, 2020, she started to experience IT problems, which other employees did not seem to have.

---

[3] *See e.g. Occupational Safety and Health Administration: Hazard Recognition*, U.S. DEP'T LAB., https://www.osha.gov/coronavirus/hazards (last visited Aug. 29, 2022); Maheema Haque & Tatiana Follett, *Workplace Safety in the COVID-19 Pandemic*, NAT'L CONF. ST. LEGIS. (Dec. 8, 2020), https://www.ncsl.org/research/labor-and-employment/workplace-safety-in-the-covid-19-pandemic.aspx.

9. Because of these IT problems, she believed that her training was not of the same standard of the other customer service representatives. Plaintiff asked her Supervisor, Naya Lopez for additional training but was denied.

10. During her employment, Plaintiff worked different shifts, creating changes in her pay and days in which she would report to work, which resulted in loss of pay and made it appear that Plaintiff was not at work when she was.

11. Plaintiff emailed her Supervisor Ms. Lopez to correct this issue. When these issues were not corrected, Plaintiff filed a complaint to Human Resources on April 7, 2021. She was contacted by Charlene Rogers, Associate Relations Consultant who Plaintiff alleges downgraded her complaint to counseling and closed her case.

12. Shortly after she complained, Plaintiff was told by Ms. Lopez, that whenever she was experiencing computer problems, she had to sign out using her leave or unpaid time. Other employees who were experiencing computer issues were allowed to work on other assignments such as inventory. However, Plaintiff asserts that she was not allowed to do.

13. On or around June 16, 2021, Plaintiff filed another complaint with Human Resources and was contacted by Travis Vass, Associate Relations Consultant. When nothing was done, she reached out to Mr. Vass Supervisor Jeffery Tucker. Charlene Rogers was assigned to Plaintiff's case, in place of Mr. Vass, and again nothing was done to resolve these issues.

14. Plaintiff was informed by Ms. Lopez there was a desk available for her in the St. Louis office. Due to her issues with her computer, Plaintiff could not work from home anymore. Naya Lopez and other employees who do not have a disability were not required to go into the office to work, nor any employee who was having computer issues were instructed to go into the office.

15. On or around June 2021, Plaintiff filed a complaint with The Ethics Department, who then responded by sending it down to Associate Relations due to this being an issue they do not handle.

16. On or around July of 2021, Plaintiff was approved for short term disability. She was told that once her short-term, disability was over, Plaintiff had to report to the office per instructions by Naya Lopez.

17. Plaintiff had submitted at least four requests for reason accommodations, and all were closed without any communication. Such requests were all eventually denied.

18. Because Plaintiff's accommodations requests were denied, and was instructed to return to working in the office, Plaintiff resigned from her position during the end of September 2021.

19. Plaintiff had applied for two other positions. One was at Anthem – SIU (Fraud Investigation Claims), where the salary was $60k for that position. The other was for an HR Position at a Special School District Central Office where she would have been salaried at $70-80k. Plaintiff was not able to obtain this position, because she had to acquire a letter of recommendation from her previous supervisor, Naya Lopez, whom the school district had difficult contacting.

20. Plaintiff then filed a Charge of Discrimination with the EEOC and MCHR. She eventually received notices of her right to sue. *See* Attachments 1 and 2.

**COUNT I: EMPLOYMENT DISCRIMINATION UNDER MHRA**

COMES NOW Plaintiff Elizabeth Rechtien, and for her claim of employment discrimination and retaliation, states as follows:

21. Plaintiff adopts and reincorporates all of the above paragraphs here again.

22. The Missouri Human Rights Act prohibits discrimination in housing, employment, and places of public accommodations based on race, color, religion, national origin, ancestry, sex, disability, age (in employment only), and familial status (in housing only).

23. An employee or applicant with a disability is an individual who:

    a. has a physical or mental impairment that substantially limits a major life activity;

    b. is regarded as having such an impairment; or

    c. has a record of having such an impairment and, with or without reasonable accommodation, can perform the essential functions of the job in question, utilize the place of public accommodations or occupy the dwelling in question.

24. An employer is required to make a reasonable accommodation to the known disability of an applicant or employee if it would not impose an undue hardship on the operation of the employer's business.

25. A "reasonable accommodation" may include:

    a. making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

    b. job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

26. Undue hardship is one that imposes significant difficulty or expense when considered in light of factors such as the employer's size, financial resources, and the nature and structure of its operation.

27. Plaintiff has complied with all procedural regulations required to proceed with her lawsuit for violation of the Missouri Human Rights Act (MHRA) due to the following:

   a. Plaintiff Rechtien was a member of the class of persons with disabilities protected by the MHRA;

   b. Plaintiff informed Defendant Anthem of her disability;

   c. Plaintiff experienced differential treatment whenever Plaintiff faced computer problems at work, which were similar in nature to what other employees would face;

   d. Plaintiff experienced differential treatment from that of other customer service representatives with regards to the training she received.

   e. Plaintiff's request for disability accommodations were all denied, and any complaints she addressed were turned down. Defendant Anthem was unable to establish undue hardship in Plaintiff's requests for disability accommodations.

   f. Plaintiff was ordered to work from the office, instead of from home. However, Naya Lopez and other employees who do not have a disability were not required to go into the office to work, nor any employee who was having computer issues were instructed to go into the office.

   g. Plaintiff was denied for other employment opportunities at Anthem, because of her disability.

WHEREFORE Plaintiff Requests that the Court enter judgment in her favor, for attorneys' fees, punitive damages and post judgement interest, and for any other relief as may be just and proper.

**COUNT II: EMPLOYMENT DISCRIMINATION & RETALIATION UNDER ADA**

COMES NOW Plaintiff Elizabeth Rechtien, and for her claim of employment discrimination and retaliation, states as follows:

28. Plaintiff adopts and reincorporates all of the above paragraphs here again.

29. The Americans with Disabilities Act (ADA) prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment.

30. Under the ADA, the term "disability" means, with respect to an individual:

   a. a physical or mental impairment that substantially limits one or more major life activities of such individual;

   b. a record of such an impairment; or

   c. being regarded as having such an impairment.

31. Furthermore, the ADA imposes an additional requirement that employers must reasonably accommodate disabilities in the workplace. A failure to do so may result in a violation of the ADA, even where there is no other adverse action taken against an employee.

32. A "reasonable accommodation" may include:

   a. making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

8

Electronically Filed - City of St. Louis - September 19, 2022 - 10:25 PM

    b. job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

33. Plaintiff has complied with all procedural regulations required to proceed with her lawsuit for violation of the ADA due to the following:

    a. Plaintiff Rechtien was a member of the class of persons with disabilities protected by the MHRA;

    b. Plaintiff informed Defendant Anthem of her disability;

    c. Plaintiff experienced differential treatment whenever Plaintiff faced computer problems at work, which were similar in nature to what other employees would face;

    d. Plaintiff experienced differential treatment from that of other customer service representatives with regards to the training she received.

    e. Plaintiff's request for disability accommodations were all denied, and any complaints she addressed were turned down. Defendant Anthem was unable to establish undue hardship in Plaintiff's requests for disability accommodations.

    f. Plaintiff was ordered to work from the office, instead of from home. However, Naya Lopez and other employees who do not have a disability were not required to go into the office to work, nor any employee who was having computer issues were instructed to go into the office.

      g. Plaintiff was denied for other employment opportunities at Anthem, because of her disability.

WHEREFORE Plaintiff Requests that the Court enter judgment in her favor, for attorneys' fees, punitive damages and post judgement interest, and for any other relief as may be just and proper.

        Respectfully submitted,

        **OTT LAW FIRM**

        */s/ Joseph Ott*
        _____
        Joseph A. Ott, #67889
        Mark E. Blankenship Jr., #73123
        3544 Oxford Blvd.
        Maplewood, MO 63143
        Telephone: (314) 293-3756
        Facsimile: (314) 689-0080
        *Attorneys for Plaintiff*